UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FERRIS & SALTER, P.C.,

       Plaintiff,

v.                                                     Case number 11-12448
                                                     Honorable Julian Abele Cook, Jr.

THOMSON REUTERS CORPORATION,
d/b/a FINDLAW,

       Defendant.

ORDER

The Plaintiff, Ferris & Salter, P.C., commenced this action in the Washtenaw County Circuit Court of Michigan, in which it accused the Defendant, Thomson Reuters Corp., d/b/a FindLaw, of committing professional negligence. Thereafter, the Defendant caused the case to be removed to this Court on the basis of its diversity jurisdiction. 18 U.S.C. §§ 1441, 1332.

Currently before the Court is the Defendant's motion to dismiss this action, Fed. R. Civ. P. 12(b)(6) or, in the alternative, to transfer it to the United States District Court for the District of Minnesota pursuant to 18 U.S.C. § 1404(a).

I.

The Plaintiff is a personal injury law firm in Ann Arbor, Michigan, whereas the Defendant is a Canadian corporation with its principal place of business in New York. In September 2006, the parties entered into a contract whereby the Defendant agreed to provide the Plaintiff with website

development and internet advertising services in exchange for an agreed-upon compensation.[1] This contract was mutually extended by the parties with an addendum in June 2009. The original contract and the addendum contained forum selection clauses which designated the state and federal courts in Minnesota as the parties' chosen forums.

In its pleadings, the Plaintiff asserts that, throughout the duration of the parties' relationship, it maintained a web site which included an inquiry section through which potential clients could transmit e-mail inquiries to its partners. In addition, potential clients were directed to its web site from various web-based services for which the Plaintiff paid substantial sums of money. The Plaintiff also asserts that these e-mail inquiries resulted in the filing and the successful litigation of "numerous meritorious cases" and the generation of "hundreds of thousands of dollars in attorneys fees." (Pl.'s Resp. Br. at 1).

According to the parties' contract, the Defendant was obligated to host and provide related services for this web site. However, the Plaintiff proclaims that, in November 2008, the Defendant's "professional and technical employees and agents negligently destroyed the previous connection/link" that had directed web site inquiries to its e-mail accounts. (*Id.* at 2). This problem was not discovered for at least fifteen months, after which the Defendant found 730 e-mails that should have been - but were not - forwarded to the Plaintiff's e-mail accounts over that period of time. As a result of the Defendant's alleged negligence, the Plaintiff contends that it lost numerous

---

[1] The Defendant alleges that the contract, to which reference was made hereinabove, was actually formed between the Plaintiff and the West Publishing Corporation ("West Publishing"), which is indirectly owned by the Defendant. West Publishing is a Minnesota corporation with its principal place of business in Minnesota. "FindLaw" is the brand name for the website development and internet advertising product that is the subject of the contract. For the purposes of the pending motion, the Court will not attempt to disentangle the relationships among these entities.

clients and hundreds of thousands of dollars in attorney fees.

## II.

Relying on the forum selection clauses in the parties' contracts, the Defendant now moves to dismiss or transfer this action. In its opposition, the Plaintiff maintains that this is not an action for breach of contract, but rather for the tort of professional negligence. Thus, it maintains that this litigation is independent of the contracts between the parties, and, hence, the forum selection clauses therein are not applicable. Moreover, the Plaintiff submits that even if the rules of contract law did apply, a dismissal pursuant to a forum selection clause is improper in removed diversity actions, and a transfer pursuant to § 1404(a) would be inappropriate in this case. The Defendant vigorously disputes all of these arguments.

A.

The Court will first address the applicability of the forum selection clause to this lawsuit. According to the Plaintiff, Minnesota law provides that (1) a professional has a duty, independent of any contract, to exercise such care, skill, and diligence as a person in that position ordinarily exercises under the circumstances, *see City of Eveleth v. Ruble*, 225 N.W.2d 521, 524 (Minn. 1974), and (2) the computer engineers and technicians who severed the link fall within the definition of professionals, *see Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 967 F. Supp. 1148, 1156 (D. Minn. 1997). In citing *Piper Jaffray,* the Plaintiff asserts that a "'professional service,' is one calling for specialized skill and knowledge in an occupation . . . [t]he skill required to perform a professional service is predominantly intellectual or mental rather than physical.'" (Pl.'s Resp. Br. at 3). However, the Defendant correctly points out that the Plaintiff has omitted language from this quotation which limits this definition to the context of a professional services exclusion

3

in an insurance policy. The Court agrees with the Defendant on this issue, and concludes that *Piper Jaffray* is inapplicable to this controversy. Furthermore, the Plaintiff has not provided any evidence that the courts in Minnesota would extend the cited *Piper Jaffray* definition by recognizing a professional negligence action against computer consultants and technicians.

More fundamentally, however, it is unclear to the Court why both parties assume that Minnesota law would be applicable if this dispute were, in fact, an independent tort action.[2] A federal court sitting in diversity applies the choice of law provisions of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). In general, "Michigan choice of law provisions favor allowing Michigan residents to bring suit in Michigan courts under Michigan law." *Gass v. Marriott Hotel Servs., Inc.*, 558 F.3d 419, 425 (6th Cir. 2009) (citing *Olmstead v. Anderson*, 400 N.W.2d 292, 302-03 (1987)). Moreover, a tort claim filed in a Michigan court - even if the alleged tort took place in a different state - "will be governed by Michigan law unless a rational reason exists to displace it." *Id.* (citation and internal quotation marks omitted). Furthermore, the Plaintiff is a Michigan resident, and "[t]here is no forum-shopping concern when the forum is also the plaintiff's state of citizenship." *Olmstead*, 400 N.W.2d at 303. Neither party has presented - nor does the Court perceive - any justification for displacing the presumption that Michigan law should apply in tort actions filed in this state. Thus, the Plaintiff's reliance upon *Piper Jaffray* is dubious for two reasons. First, its selective quoting of the case obscures the context of the ultimate holding.

---

[2]The parties' contracts contain a choice of law provision which specifies that they will be governed by and construed according to Minnesota law. However, in light of the argument by the Plaintiff that the contracts between the parties are irrelevant to this purported tort action, it cannot rely on the choice of law provision therein.

Second, if this controversy were a tort action that is wholly independent of the parties' contracts, the law of Minnesota would be irrelevant.

There is no basis under Michigan law or, for that matter, in the vast majority of those states whose courts have considered the issue, to deem computer consultants and service providers professionals. *Heidtman Steel Prods., Inc. v. Compuware Corp.*, No. 3:97CV7389, 2000 WL 621144, at *14 (N.D. Ohio Feb. 15, 2000) (applying Michigan law and dismissing professional malpractice claim against computer consultant because "[t]here is no precedent in Michigan to recogniz[e] computer consultants as professionals"); *see also, e.g.*, *Columbus McKinnon Corp. v. China Semiconductor Co.*, 867 F. Supp. 1173, 1182-83 (W.D.N.Y. 1994) ("There is no basis in law for extending the doctrine of professional malpractice to cover independent computer consultants. To lift the theory of malpractice from its narrow origin of personal, professional services to a lay patient or client and apply it to the law of commercial contracts would obfuscate the necessary boundaries of these two areas of law."); *Racine Cnty v. Oracular Milwaukee, Inc.*, 767 N.W.2d 280, 286 (Wis. Ct. App. 2009), *aff'd on other grounds*, 781 N.W.2d 88 (Wis. 2010) ("We have found convincing explanations from well-respected treatises and persuasive on-point authority from other jurisdictions that convince us that computer consultants are not professionals as that term is used in the tort of professional negligence."); *Rapidigm, Inc. v. ATM Mgmt. Servs., Inc.*, No. GD02-17261, 2003 WL 23146480 (Pa. Com. Pl. July 10, 2003) ("Most courts which have considered professional negligence claims raised against computer consultants have ruled that claims for economic loss should be governed only by contract law.").

Thus, the Court concludes that - under Minnesota or Michigan law - no professional

negligence action will lie against computer engineers and technicians.[3] Accordingly, the Plaintiff's complaint will be construed as if it had been plead in contract.

B.

Because the Court has rejected the Plaintiff's characterization of this action as a professional negligence action which is wholly independent of the contracts, the next question to be addressed is whether - and if so, by what mechanism - the forum selection clauses contained in the parties' contracts should be enforced. As an initial matter, the Court notes that it need not decide which state law applies to the contract because, for present purposes, the only law that applies is federal law. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 827-28 (6th Cir. 2009) (holding that, in diversity cases, enforceability of forum selection clause is matter of federal procedure and is thus governed by federal law). The initial contract provides, in relevant part, that:

> This Agreement will be governed by and construed under the laws of the State of Minnesota, without regard to conflicts of law provisions. The parties agree that the state and federal courts sitting in Minnesota will have exclusive jurisdiction over any claim arising out of this Agreement, and each party consents to the exclusive jurisdiction of such courts.

(FindLaw Client Development Services Agreement ("FCDSA") ¶ 23, Copy at Ex. A to Pl.'s Mot. to Dismiss).[4] The addendum that extended the contract contained the following similar provision:

---

[3]In any event, even if a tort action would lie, that action - based upon the allegedly severed link to the Plaintiff's e-mail accounts - would still "aris[e] out of" the contracts, thus falling within the broad language of the forum selection clauses. *See infra*, Part II.B.

[4]The terms of the FCDSA are expressly incorporated into the parties' contract. (*See* "Acknowledgment of Contract" section of the FindLaw Client Development Services Order Form, Copy at Ex. A to Pl.'s Mot. to Dismiss). As mentioned earlier, the parties' contract also designates the Minnesota federal and state courts as the exclusive forum. (*See id.*, "General Provisions" section ("This Order Form is subject to approval by West [Publication] in St. Paul, Minnesota, and is governed by Minnesota law. The state and federal courts sitting in Minnesota will have exclusive jurisdiction over any claim arising from or related to this agreement.")).

> This Agreement is governed by and shall be construed under the laws of the State of Minnesota, without regard to conflict of law provisions. The parties agree that the state and federal courts sitting in Minnesota will have exclusive jurisdiction over any claim arising out of this Agreement, and each party consents to the exclusive jurisdiction of such courts. Each party further waives all defenses or objections to such jurisdiction and venue.

(FindLaw Master Services Agreement ("FMSA") ¶ 14.4, Copy at Ex. B to Pl.'s Mot. to Dismiss).[5] Aside from an offhand reference to the clauses as "boilerplate language in [the] form contract used by [the Defendant] in all of internet development contracts" (Def.'s Br. at 3), the Plaintiff does not appear to argue that these clauses are invalid. Nor could it readily make this argument, in light of Supreme Court and Sixth Circuit precedent which establishes that forum selection clauses are prima facie valid and should be enforced unless an enforcement would be plainly unfair or unreasonable. *See, e.g.*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (federal court sitting in admiralty); *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826-28 (6th Cir. 2009) (applying these principles in diversity context). Here, the Plaintiff does not argue - and there is no evidence to support a finding - that these clauses are invalid.

The question then arises as to the proper procedural mechanism to address and resolve a motion to enforce a forum selection clause. The Defendant has aptly noted that "[t]here has been much confusion in federal case law as to whether a motion to dismiss premised on an agreed-upon forum selection clause should be brought under Fed. R. Civ. P. 12(b)(2),[6] (3), and/or (6), and

---

[5]The terms of the FMSA are expressly incorporated into the parties' extended contract. (*See* "Acknowledgment of Contract" section of the FindLaw Order Form - Addendum, Copy at Ex. B to Pl.'s Mot. to Dismiss).

[6]It appears that most discussions have concerned Rules 12(b)(1), (3), and (6), and not, as Thomson states, (2), (3), and (6). *See, e.g.*, *Sucampo Pharm., Inc. v. Astellas Pharm., Inc.*, 471 F.3d 544, 547-48 (4th Cir. 2006) ("Other circuits have characterized such motions as motions under Fed. R. Civ. P. 12(b)(1), (3), or (6).").

7

whether an alternative motion to transfer should be brought under 28 U.S.C. § 1404(a) and/or § 1406(a)." (Def.'s Br. at 2). However, the Sixth Circuit has held that neither § 1406(a) (dismissal or transfer for improper venue) nor Rule 12(b)(3) (defense of improper venue) is an appropriate mechanism - at least where, as here, the action was commenced in a properly-venued state court and removed to the federal court which embraces the forum where the action was filed. 18 U.S.C. § 1441(a); *Kerobo v. S.W. Clean Fuels Corp.*, 285 F.3d 531, 535 (6th Cir. 2002) (motion to dismiss for improper venue inappropriate where venue is "proper" under relevant federal statutes); *but see, e.g.*, *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1289-90 (11th Cir. 1998) (rejecting Rules 12(b)(1) and (6) as bases for motion to dismiss based on forum selection clause and holding that such motions are properly brought under Rule 12(b)(3)). By the same logic, a valid forum selection clause would not divest a court of otherwise proper subject matter or personal jurisdiction. Thus, Rules 12(b)(1) and 12(b)(2) are also inappropriate. *See, e.g.*, *Lipcon*, 148 F.3d at 1289 ("[M]otions to dismiss based upon forum-selection clauses ordinarily are not properly brought pursuant to Rule 12(b)(1), which permits motions to dismiss for lack of subject matter jurisdiction, because the basis upon which the defendants seek dismissal . . . is unrelated to the actual basis of federal subject matter jurisdiction . . . .").

Although the Sixth Circuit has not expressly held that a motion to dismiss under Rule 12(b)(6) is proper in these circumstances, it has strongly implied as much.[7] In *Langley v. Prudential*

---

[7] Despite the Plaintiff's assertion that *Kerobo* clearly held that a dismissal under Rule 12(b)(6) is improper in diversity cases involving a forum selection clause, this cited case did not, in fact, so hold. On the contrary, *Kerobo* held that a Rule 12(b)(3) dismissal for improper venue is inapplicable where venue is not, according to the relevant statute, improper. 285 F.3d at 535. Although Judge Bertelsman, in dissent, argued that the matter should not be dismissed for failure to state a claim under Rule 12(b)(6), *id.* at 540 (Bertelsman, J., dissenting), the majority did not consider - because it was not presented with - a motion to dismiss under Rule 12(b)(6).

*Mortgage Capital Co.*, 546 F.3d 365 (6th Cir. 2008), the district court had not enforced a forum selection clause because it determined that the contract itself was invalid. The Sixth Circuit reversed, finding that the contract and the forum selection clause therein were valid and enforceable. Noting that the defendant had "not yet moved for enforcement of the clause through either a motion to transfer venue under 28 U.S.C. § 1404(a) or a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim," *id.* at 369, the court remanded the case with an instruction to "entertain a motion to enforce the forum selection clause" under either of these provisions, *id.* at 366; *see also Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir. 1999) (in diversity action, affirming dismissal pursuant to unspecified Rule 12(b) motion due to valid forum selection clause). Moreover, the court noted that "[w]hether such a motion seeks transfer as opposed to dismissal may affect whether factors beyond the intent of the contracting parties may be taken into account by the district court." *Id.* (distinguishing factors considered in Rule 12(b)(6) and § 1404(a) contexts). It seems highly improbable that the court would have remanded the case for consideration of an as-yet-unfiled Rule 12(b)(6) motion if it had considered such a motion to be an improper vehicle for enforcing the forum selection clause.

Therefore, the Court concludes that - pursuant to Sixth Circuit precedent - a dismissal under Rule 12(b)(6) is proper in these circumstances. Moreover, in light of the conclusion by this Court that the forum selection clauses here at issue are valid, these provisions will be enforced.

### III.

For the reasons that have been set forth above, the Court grants the Defendant's motion to dismiss (ECF No. 5), without prejudice to the Plaintiff's ability to re-file this action in an appropriate forum.

IT IS SO ORDERED.

Date: October 19, 2011                             s/Julian Abele Cook, Jr.
                                                   JULIAN ABELE COOK, JR.
                                                   U.S. District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 19, 2011

                                                   s/ Kay Doaks
                                                   Case Manager